AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The Cellular Telephone Assigned Call Number (951)<br>830-7901, with IMSI 310240461482162 and IMEI<br>353182932126410 | )<br>)<br>)<br>)<br>)<br>)    Case No.   3:25-mc-478 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A hereto.

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❏ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18USC1349 | Attempt and Conspiracy to Commit Wire Fraud |
| 18USC1343 | Wire Fraud |
| 18USC2 | Aiding and Abetting |

The application is based on these facts:
See affidavit in support of search warrant.  To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order and an accompanying application certified by a government attorney is included.  See 18 U.S.C. §§ 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

By phone
_____
*Applicant's signature*

Chad Lindsly, HSI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ By phone at 10:11 a.m. _____ *(specify reliable electronic means).*

Date: __4/28/2025__      *Stacie Beckerman*
                                     *Judge's signature*

City and state:   Portland, Oregon        STACIE F. BECKERMAN, United States Magistrate Judge
                                                    *Printed name and title*

WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**HANNAH HORSLEY, CSB# 220436**
Assistant United States Attorney
Hannah.Horsley@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES** | **Misc. No.** ___3:25-mc-478___<br><br>**APPLICATION**<br><br>**UNDER SEAL** |

The United States of America pursuant to 18 U.S.C. § 3122, hereby applies to this Court

for an order pursuant to 18 U.S.C. § 3123 authorizing the installation and use of pen registers and

trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing,

addressing, and signaling information associated with each communication to or from the cell

phone number described in the accompanying warrant and application.  In support of this

application, the United States asserts:

1.      This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18

U.S.C. § 3123 authorizing the installation and use of pen registers and trap and trace devices.

2.      Such an application must include three elements: (1) "the identity of the attorney

for the Government or the State law enforcement or investigative officer making the

application"; (2) "the identity of the law enforcement agency conducting the investigation"; and

**Page 1**

(3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency."  18 U.S.C. § 3122(b).

3.      The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.      The law enforcement agency conducting the investigation is the Homeland Security Investigations (HSI).

5.      The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by HSI. The details of the ongoing criminal investigation, as well as the information to be obtained, are described in the accompanying warrant and attachments.

6.      This Court is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2) because it "has jurisdiction over the offense being investigated," 18 U.S.C. § 3127(2)(A)(i).

### Government Requests

7.      For the reasons stated above and in the accompanying warrant and attachments, the United States requests that the Court include in the authorization of that warrant an order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described as described in the warrant and attachments.

Dated: April 28, 2025                    Respectfully submitted,

                                        WILLIAM M. NARUS
                                        Acting United States Attorney

                                        _s/ Hannah Horsley_____
                                        HANNAH HORSLEY, CSB# 220436
                                        Assistant United States Attorney

**Page 2**

DISTRICT OF OREGON, ss:          AFFIDAVIT OF CHAD LINDSLY

**Affidavit in Support of an Application
for a Search Warrant for Geolocation Data**

I, **Chad Lindsly**, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December of 2010. My formal education includes a Bachelor of Science in the Administration of Justice and a Post-Baccalaureate Accounting Certificate from Portland State University in Portland, Oregon. Since November 2023, I have been assigned to the HSI Office of International Affairs in Vienna, Austria as an HSI Representative and police liaison. My Area of Responsibility includes Austria, Slovakia, Slovenia, Croatia, Hungary, Czech Republic, Bosnia and Herzegovina, Serbia, and Montenegro.

2.      Previously, I was assigned to the HSI Office of the Assistant Special Agent in Charge, in Portland, Oregon where I worked for over six years, including three years as a Task Force Agent with the Drug Enforcement Administration. My investigations included drug offenses, violent crime, financial crimes, and fentanyl overdose deaths. Prior to my assignment in Portland, Oregon, I was assigned to the HSI Office in Calexico, California, where I worked for over six years. During my tenure, I was assigned to the Calexico East Port of Entry with emphasis on narcotics smuggling.

3.      My formal law enforcement training includes successfully completing the 23-week HSI basic training course at the Federal Law Enforcement Training Center in Glynco, Georgia. During the training, I learned how controlled substances are manufactured, consumed,

**Affidavit of Special Agent Chad Lindsly**                                    **Page  1**

packaged, marketed, and distributed. I had also learned the basics regarding financial investigation.

4.      Since then, I have participated in dozens of drug and financial investigations involving controlled purchase operations, vehicle tracking, cell phone geo-location techniques, cell-site simulators, and pen register/trap and trace orders. I have interviewed and operated informants, operated in an undercover capacity, executed search warrants, arrested and interviewed subjects, testified at Grand Jury, testified during criminal proceedings, conducted physical surveillance and utilized electronic and video surveillance. I have been the affiant on over 500 search warrants related to narcotics, overdose deaths, Hobbs Act Robbery, kidnapping, firearm offenses, bank robbery, human trafficking, identity theft, money laundering, fraud schemes, and various financial crimes. I have been the affiant on two narcotics-related wiretap investigations and have been the co-case agent on two additional narcotics-related wiretap investigations. I have also worked with and consulted numerous agents and law enforcement officers domestically and internationally who have investigated drug trafficking, firearms offenses, and financial crimes.

5.      I submit this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(c)(1)(A) for information about the cellular telephone assigned call number:

- (951) 830-7901, with International Mobile Subscriber Identifier ("IMSI")
  number 310240461482162, International Mobile Equipment Identity ("IMEI")
  number 353182932126410, with no subscriber information and used by
  Lawrence Shaw

**Affidavit of Special Agent Chad Lindsly**                                    **Page  2**

(hereinafter "**Target Cell Phone**"), whose service provider is T-Mobile, a company headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054, as described in Attachment A hereto. As explained below, I believe there is probable cause to obtain the location and other information as described in Attachment B hereto.

6.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

7.      I am familiar with the facts and circumstances described herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Background of the Investigation

8.      On April 2, 2024, Shaw was indicted by a federal Grand Jury, case number 3:24-cr-00122-MO-2. Count 1 of the 10-count indictment charges that beginning on or about May 23, 2023, and continuing until at least the date of April 2, 2024, within the District of Oregon and

**Affidavit of Special Agent Chad Lindsly**                                    **Page 3**

elsewhere, defendant Lawrence Shaw and other known and unknown co-conspirators, did knowingly combine, conspire, confederate, and agree with each other and with other persons who identities are known and unknown, to commit wire fraud, in violation of Title 18, U.S.C., Section 1349.

9.      Additionally, Shaw is charged in Counts 4, 5 and 6 of the Indictment with wire fraud for knowingly and intentionally devising and intending to devise a material scheme and artifice to defraud Home Depot, and to obtain money and property of Home Depot by means of materially false and fraudulent pretenses, representations, and promises in violations of Title 18, U.S.C., Sections 1343 and 2.

10.      Over the span of several months, HSI has attempted to locate and arrest Shaw using several investigative techniques, including covert physical surveillance, administrative subpoenas, telephonic interview(s), record checks in law enforcement databases, obtained court authorized warrants, interviewed cooperating defendants, and others. Investigators have also consulted with other federal and state and local agencies to assist in locating and arresting Shaw. Shaw had previous ties to California, Washington, Nevada, and Georgia and has at least two other active state arrest warrants, including valid felony state arrest warrants from Washington (extradition from surrounding states) and California (in-state only). As detailed herein, my subsequent investigation has been unable to locate and arrest Shaw. Shaw's previous whereabouts was believed to be in the greater Atlanta, Georgia area from at least July 2024 to March 2025; however, Shaw's current whereabouts are unknown to law enforcement and likely believed to be in the greater California area, as detailed herein.

11.      Accordingly, I believe there is probable cause to believe that Shaw has violated

**Affidavit of Special Agent Chad Lindsly**                                    **Page  4**

federal law as described above, and that the location information described in Attachment B will assist law enforcement in arresting Lawrence Shaw, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

12.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### Target Offenses

13.     Based on the Indictment and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, U.S.C., Sections 1343, 1349, and 2 have been committed by **Lawrence Shaw**. I also believe that, based on the facts set forth in this affidavit, there is probable cause to believe that Shaw is a fugitive from justice, who is the subject of a federal arrest warrant issued in the District of Oregon after he was indicted, as discussed below.

### Cooperating Defendant

14.     A Cooperating Defendant refers to an individual that has officially been charged in an investigation and is providing information to the Government for consideration on a pending and/or charged case. As detailed herein, the Cooperating Defendant ("CD-1") is a primary subject of a criminal investigation involving the criminal fraud activities of individuals that were directly and indirectly responsible for the rental and subsequent theft of heavy-duty equipment from The Home Depot (THD) in Oregon, Washington, and Colorado between the period of May 23 – July 5, 2023. The fraud scheme totaled approximately $400,000 in depreciated assets from THD. In summary, my investigation revealed that CD-1 was directly and

**Affidavit of Special Agent Chad Lindsly**                                    **Page 5**

indirectly involved in this fraud scheme to defraud THD along with CD-1's co-defendants. As detailed herein, in April 2024, CD-1, Lawrence Shaw, and other co-defendants were indicted by a federal Grand Jury.

15.     After CD-1's arrest, CD-1 cooperated with law enforcement. In summary, CD-1 provided information, post-arrest, about CD-1's involvement in the overall fraud scheme and other co-defendants, including Lawrence Shaw (i.e., a charged co-defendant) and Shaw's use of the **Target Cell Phone**. CD-1 cooperated with law enforcement in hopes of receiving consideration related to his/her pending criminal case. CD-1 is a multi-state offender and a convicted felon, including burglary and evading arrest within the last 15 years, and multiple felony and misdemeanor convictions relating to fraud, identity theft, and/or other related financial crimes within the last 10 years. I am intentionally being vague about CD-1's previous criminal history to protect the identity of CD-1. CD-1 is currently out of custody on federal pretrial release with felony charges relating to my ongoing investigation. CD-1 is only reliable to the extent CD-1's information was independently corroborated by my investigation detailed herein.

**Statement of Probable Cause**

16.     I initiated my investigation into Shaw and other known and unknown co-conspirators in September 2023. I initiated my investigation after HSI was contacted by THD requesting assistance on the investigation due to the investigation being multi-jurisdictional and likely related to a larger complex scheme involving multiple co-conspirators and states. Specifically, I initiated an investigation into the criminal fraud activities of individuals that were directly and indirectly responsible for the rental and subsequent theft of heavy-duty equipment

from THD in Oregon, Washington, and Colorado, including Lawrence Shaw. The individuals that rented the equipment generally used their real driver's licenses, which assisted in my investigation. The sole purpose of the rentals was to defraud THD of the respective assets, which would be resold to an unwitting purchaser via an online platform, including at least via Facebook Marketplace[3]. The resale of the asset by the perpetuator(s) would be supported by fraudulent documents and the removal of THD's unique identifying markings on the asset. The resale value would be significantly less than the true value of the asset. This was corroborated by at least one asset that I located as part of my investigation. My investigation had identified at least 21 rentals and subsequent thefts across three states (i.e., Oregon, Washington, and Colorado) directly attributable to Lawrence and other co-conspirators as part of the overall fraud scheme between the period of May 23 - July 5, 2023, totaling approximately $400,000 in depreciated assets for THD. To date, at least two assets have been recovered.

17.     As part of the pre-Indictment investigation, I had identified several phone numbers attributable to Shaw, including (909) 758-1468 ("Shaw's Former Phone 1") and (626) 266-9718 ("Shaw's Former Phone 2"). The investigation revealed that Shaw used Shaw's Former Phone 1 from at least May 1, 2023, to approximately mid-June 2023. Shaw used Shaw's Former Phone 2 from at least June 1, 2023, to November 9, 2023. I identified Shaw as the likely user of Shaw's Former Phone 1 and Shaw's Former Phone 2 several ways. First, queries in law enforcement databases attributed Shaw's Former Phone 1 to Shaw at Shaw's former residence. Second, Shaw's Former Phone 1 was subscribed to Shaw at a former address in Las Vegas, Nevada, from October 11, 2021, to July 30, 2023. Third, a replacement phone analysis identified Shaw's Former Phone 2 as a replacement phone for Shaw's Former Phone 1. Fourth, a detailed

**Affidavit of Special Agent Chad Lindsly**                                    **Page  7**

transactional analysis between Shaw's Former Phone 1 and co-conspirators phones subsequent communications between other coconspirators revealed communications in temporary proximity to the relevant period and specific rentals identified herein. My analysis of the communications between Shaw (using Shaw's Former Phone 1) and other co-conspirator's phones were consistent with Shaw and other coconspirators communicating to plan, coordinate, and execute the rental / theft fraud scheme over the course of the relevant period. I then identified Shaw's Former Phone 2 as a replacement phone for Shaw's Former Phone 1 with a high-level of confidence based on a replacement phone analysis, which appeared to have been activated in mid-June 2023 and subsequently discontinued in November 2023, as detailed below. At this time, it is unknown why Shaw discontinued Shaw's Former Phone 1 and began using Shaw's Former Phone 2 and why Shaw discontinued the use of Shaw's Former Phone 2; however, the transition from Shaw's Former Phone 1 to Shaw's Former Phone 2 was is in temporal proximity to Shaw vacating Shaw's former residence and Shaw's last known direct involvement in the rental / theft fraud scheme (i.e., June 7, 2023, in Vancouver, Washington). Despite this, Shaw's Former Phone 2 (i.e., Shaw's replacement phone for Shaw's Former Phone 1) continued to communicate with co-conspirators as recently as July 30, 2023, and August 17, 2023, respectively.

18.     Based in part on the aforementioned, on or about November 9, 2023, Honorable Jolie A. Russo authorized several court authorized searches related to my ongoing investigation, including a warrant authorizing 45-days prospective geolocation information for Shaw's Former Phone 2, referencing case numbers 3:23-mc-00976-A-E. The subsequent investigation revealed that Shaw discontinued the use of Shaw's Former Phone 2 in temporal proximity to the issuance

**Affidavit of Special Agent Chad Lindsly**                                    **Page 8**

of the court authorized 45-day prospective geolocation information. Thus, I did not receive any geolocation information for Shaw's Former Phone 2.

19.     As detailed herein, on April 3, 2024, Shaw was indicted by a federal Grand Jury, referencing case number 3:24-cr-00122-MO-2. Over the span of several months, I had attempted to locate and arrest using several investigative techniques without success. Shaw's whereabouts were unknown to law enforcement and Shaw appeared transient, i.e., no permanent residence. At this time, it was unknown whether Shaw was aware of the current federal Arrest Warrant related to my investigation; however, I believe that it was likely that Shaw knew of at least the other outstanding state felony arrest warrants issued out of Washington and California. Based on my training and experience, I believed that Shaw had intentionally made it difficult for law enforcement to locate and arrest Shaw.

20.     As part of my continued investigation to locate and arrest Shaw, on or about July 23, 2024, I conducted a replacement phone analysis to identify the replacement phone used by Shaw for Shaw's Former Phone 2. The identification of Shaw's phone at the time (i.e., Shaw's Former Phone 3) would have substantially assisted my investigation, including the opportunity to locate and arrest Shaw (i.e., by requesting court authorization to geolocate Shaw's Phone). As detailed below, I had identified Shaw's replacement phone as (626) 723-8382 ("Shaw's Former Phone 3" and collectively referred to as "Shaw's Former Phones"). The investigation revealed that Shaw had used Shaw's Former Phone 3 from approximately September 18, 2023, to March 28, 2025. Shaw's use of Shaw's Former Phone 3 was corroborated several ways, including a review of subscriber information, a review of Shaw's Georgia issued driver's license that listed the phone number, a replacement phone analysis, and additional investigative findings.

**Affidavit of Special Agent Chad Lindsly**                                          **Page 9**

21.    Based in part on the aforementioned, on or about July 30, 2024, Honorable John Jelderks authorized a warrant for 45-days prospective geolocation information for Shaw's Former Phone 3, referencing case number 3:24-mc-776. The subsequent court authorized geolocation information for Shaw's Former Phone 3 revealed that Shaw was located in the greater Atlanta, Georgia area; however, the geolocation accuracy varied greatly, including from 1,000 – 8,000 meters. HSI Atlanta conducted covert physical surveillance, served administrative subpoenas, and conducted other investigative techniques. Ultimately, HSI Atlanta was unable to physically locate Shaw (i.e., Shaw's Former Phone 3) because of the accuracy of the phone information and Shaw's apparent transient nature.

22.    Then, in March 2025, I conducted a ruse call to Shaw using Shaw's Former Phone 3. I contacted Shaw in an attempt to locate and arrest Shaw as part of my ongoing investigation. Specifically, on March 14, 2025, I called Shaw (using Shaw's Former Phone 3) and identified myself as a deputy sheriff with Riverside County Sheriff's Office. In summary, I told Shaw that Shaw was identified as a victim of identity theft in the greater California area and that I wanted to alert Shaw of the fraudulent activity. Shaw confirmed he resided in the greater Atlanta area but was hesitant to talk with and meet with me. I informed Shaw that I would like to coordinate an in-person meeting to discuss the fraudulent activity, i.e., a ruse to meet and arrest Shaw. I had asked for Shaw's current residence, to which Shaw stated that the address on his Georgia-issued driver's license was a good mailing address. The address on Shaw's Georgia-issued driver's license was not consistent with the geolocation data previously obtained for Shaw's Former Phone 3. Thus, I believe that Shaw was cautious with providing his real physical address in an attempt to elude arrest for Shaw's multiple outstanding arrest warrants. I informed Shaw that I

**Affidavit of Special Agent Chad Lindsly**                                              **Page  10**

would be in communication in the coming days, to which Shaw acknowledged. Several days later, on March 17, 2025, I text messaged Shaw a photograph of the "suspect" that was identified in the ruse identity theft, to which Shaw stated that he did not know the individual.[1] Then, on March 18 and 28, 2025, I sent Shaw (using Shaw's Former Phone 3) text messages indicating that I wanted to continue discussions with him and/or meet with him, to which Shaw never responded. As detailed below, my subsequent investigation revealed that Shaw likely discontinued the use of Shaw's Former Phone 3 contemporaneous to my communications with Shaw on or about March 28, 2025, that Shaw activated the **Target Cell Phone** on March 28, 2025, and subsequently communicated with CD-1 on April 3, 4, and 9, 2025. Additionally, I believe that Shaw has departed the greater Atlanta, Georgia area and is now likely in the greater Los Angeles, California area at an unknown location. Based on my training and experience, I believe that Shaw departed Atlanta, Georgia to elude arrest by law enforcement.

23.     In April 2025, HSI Portland and I received information from CD-1. I am intentionally being vague about the specific date to protect the identity of CD-1. In summary, CD-1 provided information about CD-1's involvement in the overall fraud scheme and other co-defendants, including Lawrence Shaw (i.e., a charged co-defendant) and Shaw's use of the **Target Cell Phone**. Specifically, CD-1 stated in April 2025 (i.e., before CD-1 provided information to law enforcement) that Shaw contacted CD-1 using the **Target Cell Phone**. In summary, CD-1 stated that Shaw contacted CD-1 and attempted to convince CD-1 to take the

---

1  The photograph of the "suspect" I sent to Shaw was from another unrelated financial case involving identity theft in the greater Los Angeles, California area. The picture was of an unknown black male on a fraudulent California-issued driver's license.

**Affidavit of Special Agent Chad Lindsly**                                    **Page  11**

blame for all the charges to allow Shaw to go free.

24.     Shortly thereafter, HSI Portland served an administrative summons and received subscriber information and call detail records for the **Target Cell Phone**. A subsequent review of the records revealed several things. First, the **Target Cell Phone** had no subscriber information, i.e., a burner phone. Second, the **Target Cell Phone** was activated on March 28, 2025. I noted that the activation date was the same day as my last attempted communication with Shaw using Shaw's Former Phone 3. Third, a review of the call detail records confirmed CD-1's statements regarding Shaw's communications with CD-1. Specifically, the call detail records showed that Shaw (using the **Target Cell Phone**) called CD-1's phone on April 3, 2025, at 8:01 p.m. for approximately 12 minutes. The content of the call is unknown; however, as detailed herein, CD-1 reported that Shaw called CD-1 and attempted to coax CD-1 into taking the blame on the charges. Then, the following day on April 4, 2025, Shaw (using the **Target Cell Phone**) called CD-1's phone again at 8:40 a.m. for approximately 12 minutes. The content of the call is unknown. Then, between April 6 – 9, 2025, Shaw (using the **Target Cell Phone**) and CD-1 (using CD-1's phone) exchanged five calls back and forth. A review of the records revealed that none of these five communications appeared to connect, i.e., Shaw and/or CD-1 did not answer the phone. Then, on April 9, 2025, at 2:11 p.m., Shaw (using the **Target Cell Phone**) called CD-1 (using CD-1's phone) for approximately 12 minutes. The content of the call is unknown. Based on my training, experience, and information provided by CD-1, I believe that Shaw called CD-1 to gain information about the ongoing case and to coax CD-1 into taking the blame.

25.     I then conducted a common call analysis between Shaw's Former Phone 3 and the **Target Cell Phone**. The purpose of the common call analysis was to confirm CD-1's

**Affidavit of Special Agent Chad Lindsly**                                         **Page  12**

information and that Shaw was the user of the **Target Cell Phone**. In summary, a replacement phone analysis is conducted by reviewing call detail records for the identified former phone and current phone. Generally, a replacement phone analysis can be conducted several days after a phone has been discontinued. Although a phone is discontinued, the user of the phone will likely continue to communicate with many of the same top dialed numbers using a new replacement phone. In this case, Shaw discontinued the use of Shaw's Former Phone 3 and began using the **Target Cell Phone** (i.e., a replacement phone). Based on my training and experience, I believed that Shaw would likely continue to communicate with many of the top dialed numbers of the former phones (i.e., family members, friends, associates, co-conspirators, etc.). The replacement phone is subsequently confirmed by conducting a detailed call analysis of the top dialed numbers' tolls from the former phone to the new phone. I also review the stop and start date(s) of the respective phones, including the former phone and the replacement phone. Generally, the replacement phone is placed in service in temporal proximity to the former phone being discontinued. Occasionally, these two phones (i.e., the former phone and the replacement phone) might overlap several days to ensure continuity. I also know that it is common for those engaged in criminal activity to use multiple cellular phones simultaneously, including for long periods of time. This is done for several reasons, including compartmentalizing criminal activities. In this case, the investigation revealed that Shaw discontinued the use of Shaw's Former Phone 3 and began using the **Target Cell Phone** to likely elude detection by law enforcement, among other things.

26.    Specifically, as part of my initial investigation and my replacement phone analysis between Shaw's Former Phone 3 and the **Target Cell Phone**, I had identified at least six

**Affidavit of Special Agent Chad Lindsly**                                     **Page 13**

common dialed numbers between the two phones, including x8446, x4121, x6404, x6842, x5228, and x1754. Based on my training and experience, I believe this is strong evidence to indicate that the user of the phone is the same, i.e., Shaw. I also noted a general change of the assigned area code of the phone numbers that Shaw (using the **Target Cell Phone**) called compared to Shaw's use of Shaw's Former Phone 3. Specifically, Shaw's Former Phone 3's top dialed numbers had greater Atlanta area codes (i.e., 404, 470, 678, 770, etc.) and the **Target Cell Phone's** top dialed number had greater Los Angeles area codes (i.e., 213, 310, 323, 404, 424, 562, etc.). Based on my training and experience, I can opine that it is likely that Shaw departed the greater Atlanta area and is now likely in the greater Los Angeles area based on calling activity.

27.     Based on the information provided above, I have probable cause to believe and I do believe that Shaw is using the **Target Cell Phone**. I believe geolocation data and historical information for the **Target Cell Phone** will assist in locating Shaw's physical location, track Shaw's movements, and assist in taking Shaw into custody

### Records Held by Provider

28.     In my training and experience, I have learned that Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS

**Affidavit of Special Agent Chad Lindsly**                                    **Page  14**

tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

29.    Based on my training and experience, I know that Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Provider's network or with such other reference points as may be reasonably available.**)**

30.    Based on my training and experience, I know that Provider can collect cell-site and other location data about the **Target Cell Phone**, including the information requested in Attachment B. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**Affidavit of Special Agent Chad Lindsly**                                           **Page  15**

**Conclusion**

31.     Based on the foregoing, I request that the Court issue the proposed search

warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). I further

request that the Court authorize execution of the warrant at any time of day or night, owing to the

potential need to locate the **Target Cell Phone** outside of daytime hours.

32.     I further request that the Court direct the Provider to disclose to the government

any information described in Attachment B that is within the possession, custody, or control of

Provider. I also request that the Court direct Provider to furnish the government all information,

facilities, and technical assistance necessary to accomplish the collection of the information

described in Attachment B unobtrusively and with a minimum of interference with Provider's

services, including by initiating a signal to determine the location of the **Target Cell Phone** on

Provider's network or with such other reference points as may be reasonably available, and at

such intervals and times directed by the government.

33.     Prior to being submitted to the Court, this affidavit, the accompanying

application, and the requested search warrant were all reviewed by Assistant United States

Attorney (AUSA) Hannah Horsley. I was informed that it is AUSA Horsley's opinion that the

affidavit and application are legally and factually sufficient to establish probable cause to support

the issuance of the requested warrant and that the information likely to be obtained is relevant to

an ongoing criminal investigation.

**Request for Delaying Notice**

34.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal

Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Based upon my knowledge, training, and experience, it is my belief that providing immediate notice to subscriber or user of the **Target Cell Phone** may result in flight from prosecution, the destruction of or tampering with evidence, intimidation of potential witnesses, and/or otherwise seriously jeopardize an investigation. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

### Request for Sealing

35.    I further request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, the attachments, and the requested search warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrant may adversely affect the integrity of the investigation.

**Affidavit of Special Agent Chad Lindsly**                                                **Page  17**

_By phone pursuant to Fed. R. Crim. P. 4.1_
Chad Lindsly
Special Agent, HSI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

_____10:11_____ a.m./p.m. on _____April 28_____, 20 _25_ .

_____
HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge

**Affidavit of Special Agent Chad Lindsly**                          **Page  18**

**ATTACHMENT A**

**Property to Be Searched**

1.      The cellular telephone assigned call number (951) 830-7901, with International Mobile Subscriber Identifier ("IMSI") number 310240461482162 and International Mobile Equipment Identity ("IMEI") number 353182932126410 (hereinafter "Target Cell Phone"), whose wireless service provider is T-Mobile, a company headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.      Information about the location of the Target Cell Phone that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to Be Seized

I.      **Information to Be Disclosed by T-Mobile (hereinafter "Provider")**

A.      Prospective Information: All information about the location of the Target Cell Phone described in Attachment A for a period of 45 days, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information [distance from tower, range to tower (PCMD/RTT/REVEAL/Historic MLTs, TrueCall, TDOA or Timing Advance Information or other similar un-named records held by the Provider)], as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

B.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government.  In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate Provider for reasonable expenses incurred in furnishing such facilities or assistance.

C.      Historical Information: To the extent that information associated with (cellular phone numbers or other account identifiers of the **Target Cell Phone**) (hereinafter "Account") is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider, the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period ***March 28, 2025, to date of warrant***:

1.      The following information about the customers or subscribers of the Account:

a.      Names (including subscriber names, user names, and screen names);

b.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.      Local and long distance telephone connection records;

d.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

e.      Length of service (including start date) and types of service utilized;

f.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h.      Means and source of payment for such service (including any credit card or bank account number) and billing records.

2.      All records and other information (not including the contents of

communications) relating to the Account, including:

    a.      Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

    b.      Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

    c.      All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account; and

    d.      All historical geo-location services/global positioning system (GPS) data/enhanced 911 (E911) records including any available ranging data [distance from tower, range to tower (PCMD/RTT/REVEAL/Historic MLTs, TrueCall, TDOA or Timing Advance Information or other similar un-named records held by the Provider)] which may be available to the Provider.

D.      This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.      Information to Be Seized by the Government

All information described above in Section I that will assist in arresting **Lawrence Shaw**, who was charged with violating Title 18, U.S.C., Section 1349 – Attempt and Conspiracy to Commit Wire Fraud, Title 18, U.S.C., Section 1343 – Wire Fraud, and Title 18, U.S.C., Section 2 – Aiding and Abetting on or about May 23, 2023, and continuing until at least the date of April 2, 2024, within the District of Oregon, is the subject of an arrest warrant issued on April 3, 2024,

and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).